UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVE MILES | CIVIL ACTION |
| VERSUS | NUMBER 08-4436 |
| MEMC PASADENA, INC., ET AL. | SECTION "L" (2) |

## ORDER & REASONS

Before the Court is the Defendant's Motion for Summary Judgment (Rec. Doc. 4). For the following reasons, the Defendant's motion is DENIED.

I.   BACKGROUND

The Plaintiff, a chemical plant supervisor, alleges that on or about January 28, 2004, he was working at the MEMC chemical plant in Convent, Louisiana, when he suffered severe and debilitating injuries resulting from a leak of Silicon Tetraflouride ("SiF4") chemical gas. The Defendant, MEMC Pasadena, Inc., owned the chemical plant and contracted with Mosaic Fertilizers, Inc., the Plaintiff's employer, to maintain plant operations. According to the Plaintiff, he was performing his normal supervisor duties when he heard a sudden alarm and quickly attempted to exit the plant. As he made his way toward the exit, he inadvertently entered into a room where the SiF4 gas had accumulated.[1]  Upon entering the room, the Plaintiff immediately began choking and gasping for breath. Unable to breathe, he collapsed onto the floor and was eventually dragged to safety by three of his co-workers.

---

[1] SiF4 is a colorless gas that is corrosive to the eyes, respiratory system, and skin. If inhaled, SiF4 gas can be extremely toxic.

After receiving emergency treatment from a company nurse at the chemical plant, the Plaintiff was transported to St. James Parish Hospital by ambulance. The hospital staff treated and released the Plaintiff later that same day, but, still choking and coughing, he checked back into the hospital again that evening and was admitted overnight. Two days after the accident, on January 30, 2004, the Plaintiff contacted an attorney because he continued to suffer from shortness of breath, coughing, and chest pain. Although it is not clear from the parties' briefing, it appears that the attorney advised the Plaintiff that he did not have a strong case.

Several months later, in June 2004, the Plaintiff's condition still had not improved and he sought treatment with Dr. Donthineni. The Plaintiff reported elevated blood pressure and chest pain that radiated down both of his arms and shoulders. When Dr. Donthineni advised the Plaintiff that his kidneys were "going bad," the Plaintiff asked whether the condition might be related to his earlier chemical exposure. According to the Plaintiff, however, Dr. Donthineni "didn't think so" and denied any possible connection between the two events.

Shortly after treating with Dr. Donthineni, the Plaintiff sought additional medical treatment with Dr. Julka, a renal specialist who assured the Plaintiff that his earlier chemical exposure had neither caused nor contributed to his kidney failure. Dr. Julka apparently continued to advise the Plaintiff that the two events were unrelated until the fall of 2007, when, for reasons that are unknown, Dr. Julka suddenly reevaluated his earlier diagnosis and advised the Plaintiff that the chemical exposure may in fact have caused or at least contributed to his kidney failure.

On August 18, 2008, the Plaintiff filed suit in the 23rd Judicial District Court, St. James Parish, against MEMC Pasadena, Inc., and Roger Zetler, an MEMC engineer who worked at the Convent plant. The Plaintiff alleges that the chemical pipes transmitting the $SiF_4$ gas were

severely corroded because Mr. Zetler had miscalculated the amount of moisture going through them. In addition, the Plaintiff also contends that MEMC negligently failed to provide a safe work environment or take adequate safety precautions to prevent against dangerous gas leaks.

## II. PRESENT MOTION

The Defendant, MEMC Pasadena, has filed a motion for summary judgment on the grounds that the Plaintiff's claims are barred by prescription. The Defendant argues that the Plaintiff knew immediately at the time of the accident that he had inhaled SiF4 gas. The Defendant further contends that, as a supervisor, the Plaintiff had been trained in and was aware of the potential health risks attributable to SiF4 exposure. According to the Defendant, the fact that the Plaintiff's doctors may have told him that his injuries were unrelated to his SiF4 exposure is irrelevant for purposes of prescription, because the Plaintiff himself had reason to believe–and in fact did believe, at least initially–that the two were related.

In response, the Plaintiff argues that summary judgment is inappropriate because there are genuine issues of material fact as to whether the Plaintiff knew or should have known that his injuries were attributable to the SiF4 gas leak. The Plaintiff argues that he reasonably relied on the advice of numerous doctors, particularly Dr. Julka, a renal specialist who repeatedly assured him that his injuries were unrelated to the SiF4 gas exposure. According to the Plaintiff, prescription did not commence until the fall of 2007, when Dr. Jukla reversed his earlier opinion and advised the Plaintiff that the SiF4 chemical exposure may have caused or at least contributed to his kidney failure.

## III. LAW & ANALYSIS

Summary judgment is appropriate in a case if "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). "The moving party bears the burden of demonstrating that

there exists no genuine issue of material fact." *McCall v. Focus Worldwide Television Network, Inc.*, 2008 WL 3366080, *3 (E.D. La. Aug. 8, 2008). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

Under Louisiana law, the one-year liberative prescription period for delictual actions begins to run from the date the injury or damage is sustained. La. Civ. Code art. 3492. "Damage is considered to have been sustained ... when it has manifested itself with sufficient certainty to support accrual of a cause of action." *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993). "Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Camp v. Correa*, 01-2707, pp. 11-12 (La. 6/21/02); 828 So. 2d 502, 510. "An injured party has constructive notice of his condition when he possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry." *Alexander v. Fulco*, 39,293, p. 3 (La. App. 2 Cir. 2/25/05); 895 So. 2d 668, 671.

In order to mitigate the occasional harshness of prescriptive statutes, Louisiana courts have recognized the doctrine of *contra non valentem*, a jurisprudential exception to prescription

-4-

which suspends prescription in certain instances. *Id.* "[C]ontra non valentem is applied when a cause of action is not reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant." *Kroger Co. v. L.G. Barcus & Sons*, 43,804, p. 4 (La. App. 2 Cir. 1/14/09); 2 So. 3d 1163, 1166. Under the doctrine of *contra non valentem,* prescription commences "on the date the injured party discovers or should have discovered the facts upon which the cause of action is based." *Id.* As the Louisiana Supreme Court has explained,

> [p]rescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.... When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.

*Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987). When, as in the instant case, "a petition reveals on its face that prescription has run, the plaintiff has the burden of showing the claim has not prescribed." *Wimberly v. Gatch*, No. 93-C-2361 (La. 4/11/94); 635 So. 2d 206.

The plaintiff must show that the cause of action for his injuries was not reasonably knowable. This is a heavy burden. "When prescription begins to run depends on the reasonableness of a plaintiff's action, or inaction." *See Cole*, 620 So. 2d at 1157. As the Louisiana Supreme Court has explained, "[t]he question is whether, in light of plaintiff's own information and the diagnoses he received, the plaintiff was reasonable to delay in filing suit." *Id.* It is not necessary that the plaintiff actually know of his injury or the cause of his injury for prescription to commence; rather, "the plaintiff will be deemed to know that which he could have learned by reasonable diligence." *Matthews v. Sun Exploration & Production*, 521 So. 2d 1192, 1997 (La. 1988).

In *Cole v. Celotex Corporation*, the Louisiana Supreme Court held that the doctrine of *contra non valentem* prevented the running of prescription against a plaintiff alleging claims for asbestosis when the plaintiff had several inconclusive diagnoses from his physicians and had not suffered any physical symptoms associated with asbestos-related lung disease. 620 So. 2d at 1158. Prior to filing suit in 1987, the plaintiff in *Cole* had worked as a carpenter and a maintenance foreman for almost thirty-four years and was aware of the fact that he had come into regular contact with asbestos as part of his normal work duties. *Id.* at 1154-56. Although the plaintiff had never experienced any symptoms of asbestosis prior to filing suit, he had been diagnosed with pneumonia and pleurisy of the lungs on several occasions. *Id.* For example, in 1979, in response to a chest x-ray indicating pleurisy of the lungs, the plaintiff's employer had placed him in the company's Asbestos Survey Program, an annual monitoring program consisting of pulmonary function tests, chest x-rays, and physical examinations. *Id.* In 1982, after an additional chest x-ray revealed pleural thickening and calcification, the plaintiff's doctors advised him to stay away from asbestos even with a respirator. *Id.* In 1983, the plaintiff was referred to a pulmonologist, who informed him that the thickening and calcification in his chest could be the result of several possible causes, including but not limited to an asbestos-related lung disease. *Id.*

In holding that the plaintiff's claims had not prescribed, the court found persuasive the fact that the plaintiff's doctors had all advised him that his condition could have been attributable to a number of causes and was not necessarily the result of an asbestos-related lung disease. *Id.* The court further noted that, even though the plaintiff's employer had closely monitored him in the Asbestos Survey Program for several years, the employer had "never considered that any treatment related to the findings on his chest x-ray was necessary." *Id.* Because the plaintiff had

reasonably relied upon his doctors' findings as well as his own subjective state of health, the court found that prescription had not commenced prior to the plaintiff's receipt of a positive diagnosis of asbestosis, even though the plaintiff had known that he was at risk for the disease. *Id.*; *see also Cordova v. Hartford Accident & Indemnity Co.*, 387 So. 2d 574, 577 (La. 1980) ("The law does not impose upon a layman the obligation to self-diagnose a psychopathological condition which reproductive biologists themselves do not fully understand. Plaintiff had confidence in his physician's skill and judgment.").

Turning to the instant case, the Court finds that there is at least a genuine issue of material fact as to when the Plaintiff knew or should have known that there was a connection between his deteriorating health and his earlier exposure to the SiF4 gas. Unlike the plaintiff in *Cole*, who was advised on several occasions that he was at risk for asbestosis, was placed in an Asbestos Survey Program, and was told that the condition of his lungs might be attributable to an asbestos-related lung disease, the Plaintiff in the instant case was repeatedly assured that his kidney failure was unrelated to his SiF4 chemical exposure. Although the Plaintiff in the instant case did experience physical symptoms suggesting an injury, he was repeatedly assured by his physicians that there was no connection between his symptoms and the SiF4 gas leak. Despite his efforts to determine whether he had been injured during the gas leak, he was unable to do so. The question then is whether, as a matter of law, the plaintiff acted unreasonably as a matter of law in relying on the advice of two doctors, one of whom is a renal specialist, and both of whom advised him that his chemical exposure had not contributed to his kidney failure. Although it is true that the plaintiff, as a chemical plant supervisor, had received some specialized training concerning the effects of SiF4 gas on the human body, it is unreasonable to assume that his training alone was sufficient to expect him to diagnose his own condition and to start the

-7-

prescriptive clock when even his doctor, a renal specialist, failed to draw a connection between the two events.  The plaintiff had confidence in the skill and judgment of his two physicians.

Given these facts, the Court is unable to hold that the plaintiff was unreasonable as a matter of law in choosing not to file suit at the earliest possible moment.  Admittedly, this is a close case, but in such a case, the Court is mindful of the Louisiana Supreme Court's instruction that courts should "resolve doubts about a peremptory exception by overruling the exception (or referring the exception to the merits) and affording the litigant its day in court."  *See Woodlawn Park Ltd. P'ship v. Doster Const. Co.*, 623 So. 2d 645, 648 (La. 1993); *see also Henson v. St. Paul Fire & Marine Ins. Co.*, 363 So. 2d 711, 712 (La. 1978) ("When it can reasonably do so, a court will maintain a petition against a peremptory exception so as to afford the plaintiff an opportunity to present his evidence."); *Baker v. Conagra Broiler Co.*, 640 So. 2d 494, 497 (La. App. 3d Cir. 1978) ("Prescriptive statutes are to be construed in favor of maintaining rather than barring actions.").  In light of this jurisprudence, the Court finds that there is, at the very least, a genuine issue of material fact as to whether the plaintiff should have known that the two events were related.  Accordingly, the Plaintiff has carried his burden of demonstrating a material fact as to whether his claims have prescribed and, as a result, summary judgment is inappropriate at this time.

## IV.	CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment (Rec. Doc. 4) IS DENIED.

New Orleans, Louisiana, this 6th day of May, 2009.

_____
UNITED STATES DISTRICT JUDGE